UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:05-CR-146 |
| V. | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| | ) | |
| ROBERT ANTOINE TRUSS, | ) | |
| MICHAEL DEWAYNE DILLARD, and | ) | |
| JASMINE DESREKA CROWLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court pursuant to the defendants' two motions to dismiss the indictment: Defendant Crowley's Motion To Dismiss Indictment On Basis Of Constitutional And Procedural Insufficiencies [Doc. 62], filed on January 31, 2006, and Crowley's Motion To Dismiss Indictment On The Basis Of Reverse Vertical Preemption [Doc. 67], filed on February 1, 2006. The Court has permitted [Doc. 84] Defendants Truss and Dillard to adopt the pleadings filed by co-defendants, including Defendant Crowley's motions [Docs. 62 and 67] to dismiss the indictment.

The Court heard oral argument on these motions, as well as others, at the March 29, 2006 scheduled motion hearing. Assistant United States Attorney Steve Cook was present representing the government. Attorney Ursula Bailey was present representing Defendant Truss and Attorney Dennis Francis was present representing Defendant Dillard. Defendants Truss and Dillard

1

were present as well.  Additionally, Attorney Stephen Johnson was present representing Defendant Crowley, who was subpoenaed by Defendant Truss to testify at the March 29 hearing on a motion to suppress.

Defendant Truss is charged [Doc. 3] in Counts One through Four of the five-count indictment, while Defendant Dillard is charged [Doc. 3] in Counts One through Three of the five-count indictment with:  (Count One) conspiracy to distribute and possess with intent to distribute fifty (50) grams or more of cocaine base, (Count Two) manufacturing fifty (50) grams or more of cocaine base, (Count Three) possession with intent to distribute fifty (50) grams of cocaine base, and Truss is charged in (Count Four) with possession of a firearm in furtherance of drug trafficking crime, namely the conspiracy to manufacture, distribute and possess with intent to distribute fifty (50) grams or more of cocaine base.  The conspiracy is alleged to have occurred from November 30, 2005 through December 2, 2005.  Counts two, three and four are alleged to have occurred on December 2, 2005.  Each count also indicates the amount of drugs involved, specifically, fifty (50) grams or more of cocaine base.

### I. CONSTITUTIONAL AND PROCEDURAL INSUFFICIENCIES & LACK OF NEXUS WITH INTERSTATE COMMERCE

The defendants move [Doc. 62] the Court, pursuant Rule 7(c) and 12(b)(2) of the Federal Rules of Criminal Procedure, the Indictment, Due Process, and Double Jeopardy clauses of the Fifth Amendment, the Notice Clause of the Sixth Amendment, Hamling v. United States, 418 U.S. 87, 117 (1974), and their progeny, for an Order dismissing the Indictment.

*1. Procedural and Constitutional Sufficiency*

First, the defendants argue that the Indictment only provides a bare bones recitation of the statutory language and fails to allege the essential facts (particularity of time, place and circumstances) giving rise to the charges. Accordingly, they maintain that the Indictment fails to provide the defendant with sufficient notice, protect against the dangers of double jeopardy, and provide the Court with sufficient facts to ascertain whether they are sufficient in law to support a conviction, if one should be had. The government, while filing a written response to this motion [Doc. 85], does not specifically address this issue.

The basic Constitutional standard by which to judge the sufficiency of an indictment is mandated by the Sixth Amendment which requires that the indictment inform the defendant of "the nature and cause of the accusation." U.S. Const., amend. VI. This standard is expressed by Fed. R.Crim.P. 7(c)(1), which states, in part, that the indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The landmark Supreme Court opinion of Russell v. United States, 369 U.S. 749, 763-64 (1962), elucidates the criteria by which the sufficiency of an indictment may be measured.

To pass constitutional muster, an indictment must meet a two-prong test: (1) the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces, and (2) the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts. Id.; see United States v. Martinez, 981 F.2d 867, 872 (6th Cir. 1992). Under this standard, "[a]n indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the

3

offense." United States v. Anderson, 182 F.3d 918, 1999 WL 503519 (6th Cir. July 9, 1999) (citing Hamling, 418 U.S. at 117). However, such a general description of the offense must "be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." Hamling, 418 U.S. at 117-18. In sum, then, an indictment is "presumed sufficient if it tracks the statutory language, cites the elements of the crime charged, and provides approximate dates and times." Anderson, 1999 WL 503519 at **3 (citing United States v. Chichy, 1 F.3d 1501, 1504 n.3 (6th Cir. 1993)).

Based on the above criteria, the Court finds that the Indictment [Doc. 3] passes Constitutional scrutiny. Specifically, the Court finds that the Indictment gives the defendants adequate notice of the charges against them. First, the Indictment tracks the statutory language of the appropriate sections of the United States Code, setting forth the elements of the charged offenses, and provides citations to same. Second, contrary to the defendants' contention that the Indictment fails to allege the essential facts (particularity of time, place and circumstances) giving rise to the charges, the Court finds that the Indictment clearly specifies (1) the amount and type of narcotics involved and (2) the precise dates of the alleged conspiracy.

Furthermore, the Court finds that the information provided in the Indictment is fully adequate should the defendants be required to raise their conviction or acquittal as a bar to double jeopardy. Since the indictment is sufficiently specific to inform the defendants of the charges against them, to protect them from double jeopardy, and to enable preparation for trial, the Court finds the defendants constitutional arguments to be unfounded and recommends that the District Court deny the motion to dismiss the indictment on this basis.

*2. Nexus with Interstate Commerce*

Second, the defendants maintain that the Indictment fails to allege a specific interstate commerce element. They argue that the manufacture, use of, and sale of controlled substances does affect commerce, but notes that in some circumstances it might affect intrastate commerce as opposed to interstate commerce. Arguing that the Constitution requires a distinction between what is truly national and what is truly local, United States v. Morrison, 529 U.S. 598 (2000), the defendants contend that, as charged, there is no requirement that the government prove, and the jury find, that the conduct at issue was truly interstate in nature. More specifically, they argue that the Controlled Substances Act[1], 21 U.S.C. § 801 et seq., absent an implied interstate commerce element, overbroadly regulates commerce. The government responds [Doc. 85] that the defendants' argument that an interstate nexus must be charged as an element of the statute was rejected by the Sixth Circuit in United States v. Brown, 276 F.3d 211 (th Cir. 2002).

"Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." United States v. Morrison, 529 U.S. 598, 608 (2000). Article I, Section 8 of the Constitution enumerates the congressional powers. Congress has the power to "regulate commerce with foreign nations, and among the several states, and with the Indian tribes" and to make any laws "necessary and proper" for the carrying out of this power. U.S. Const. art. I, § 8, cl. 3, 18. The evolution of case law in this area has identified three broad categories of activity that Congress may regulate under the Commerce Clause: (1) "'the use of the channels of interstate commerce,'" (2) "'the instrumentalities of interstate commerce, or persons or things in interstate

---

[1] The Historical and Statutory Notes to 21 U.S.C. § 801 state that this Act "is popularly known as the 'Controlled Substances Act.'" The note states that the complete classification of the Title is contained in the Short Title section of the Notes, which lists the various names given to numerous amendments of the Act. For purposes of this report and recommendation, the Court will refer to the Act by its popular name.

5

commerce, even though the threat may come only from intrastate activity,'" and (3) "'those activities having a substantial relation to interstate commerce, . . .  i.e., those activities that substantially affect interstate commerce.'" Morrison, 529 U.S. at 608-09 (quoting United States v. Lopez, 514 U.S. 549, 558 (1995)).  Drug offenses have been analyzed under the third category. See Lopez, 514 U.S. at 559; see also United States v. Tucker, 90 F.3d 1135, 1139 (6th Cir. 1996).

The defendants rely upon Lopez and Morrison to argue that Congress exceeded its authority under the Commerce Clause in enacting the Controlled Substances Act because the Act reaches purely intrastate activity.  In Lopez, the Court held that the Gun Free School Zones Act of 1990, which made it illegal under federal law to possess a gun in a school zone, was unconstitutional under the Commerce Clause because the regulated activity had nothing to do with commerce and the statute contained no express jurisdictional element limiting the proscribed conduct to truly interstate activity.  514 U.S. at 561.  In Morrison, the Court invalidated the Violence Against Women Act because the link between the proscribed acts and the effect on interstate commerce was too attenuated despite congressional findings regarding these effects.  529 U.S. at 614-15, 617-18.  The defendants argue that consideration of the reasoning in these cases compels the same result with regard to the Controlled Substances Act.

The Sixth Circuit has held that the federal drug statutes are authorized by Congress's powers under the Commerce Clause even though the laws may reach drug crimes that occur only within the state.  United States v. Brown, 276 F.3d 211, 214 (6th Cir. 2002); see also Tucker, 90 F.3d at 1139.  Indeed, the Court has noted that such has been the holding of every circuit to address the issue since the Lopez case.  Brown, 276 F.3d at 214-15 (collecting cases); Tucker, 90 F.3d at 1139 (collecting cases).  Congress has expressly found that intrastate manufacturing and possession

of drugs have a "substantial and direct effect upon interstate commerce because–(A) after manufacture, many controlled substances are transported in interstate commerce." 21 U.S.C. § 801(3)(A). It has also found that "[l]ocal distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances" and that it is impossible to distinguish between illegal drugs manufactured and distributed intrastate as opposed to interstate. 21 U.S.C. 801(4)-(5). The Sixth Circuit relied upon these congressional findings to uphold the constitutionality of the drug statutes prior to Lopez. See United States v. Scales, 464 F.2d 371, 375 (6th Cir. 1972). In Scales, the court observed that once a court makes "a determination that the regulated class of activities is within the reach of Congress's powers under the Commerce Clause, [it] may not inquire whether the individual incident before it has the necessary nexus with interstate commerce." Id. at 374-75 (citing Perez v. United States, 402 U.S. 146, 155 (1971)).

As noted above, the Sixth Circuit has continued to uphold the constitutionality of the Controlled Substances Act in the wake of Lopez. See Brown, 276 F.3d at 214-15; Tucker, 90 F.3d at 1139 ("Lopez does not give us cause to question Congress's power to regulate an activity as clearly commercial as drug trafficking."). The defendant questions whether the reliance upon Congress's findings is justified after the Supreme Court's holding in Morrison, which held that even though Congress has found that the proscribed activity affects interstate commerce, the courts must still assure that activity has a sufficient effect on interstate commerce to come within Congress's powers. See Morrison, 529 U.S. at 613.

In Brown, the Sixth Circuit upheld the Controlled Substances Act after the Supreme Court's holding in the Morrison case. The Court acknowledges that the Brown court did not analyze Morrison but relied upon Tucker, which in turn relies upon Scales and the congressional findings.

7

See Brown, 276 F.3d at 214; see also Tucker, 90 F.3d at 1139. Nevertheless, Tucker rules that the drug statutes' connection to interstate commerce is substantial:

> Unlike the Gun-Free School Zones Act [at issue in Lopez], the statutory scheme at issue here neither "plows thoroughly new ground" nor "represents a sharp break with the long-standing pattern" of federal regulation. See Lopez, 514 U.S. at ----, 115 S. Ct. at 1632 (quoting Lopez, 2 F.3d at 1366). Rather, § 860[,which enhances the penalty when drug trafficking occurs within one thousand feet of a school,] addresses a clearly commercial activity that has long been within federal power to regulate. In contrast to the firearm possession at issue in Lopez, drug trafficking is an "economic enterprise" that substantially affects interstate commerce in numerous clear ways. Each individual instance of cocaine dealing, for example, represents the end point of a manufacturing, shipping, and distribution network that is interstate–and international–in nature. In fact, Congress included specific findings to that effect when it passed the Controlled Substances Act.

Tucker, 90 F.3d at 1139. Thus, the Tucker court found the substantial connection to interstate commerce was supported by the congressional findings. Furthermore, unlike in Lopez and Morrison, the activity proscribed by the Controlled Substances Act–the manufacture, distribution, and possession of controlled substances–relates to an economic enterprise. See Tucker, 90 F.3d at 1139 (observing that the Act "addresses a clearly commercial activity that has long been within federal power to regulate"). Thus, the Court finds that the link between the proscribed activity and the effect on interstate commerce is not attenuated.

Additionally, at the March 29 hearing, the defendants argued that even if the Controlled Substances Act is not unconstitutional on its face, the Indictment, nonetheless, must specifically allege the interstate commerce element in order to allege all the elements of the offense charged. In support of their argument, the defendants submitted to the Court District Court Judge

8

Todd Campbell's Order [Doc. 57] in United States v. Young Moon[2]. In Young Moon, the issue was whether the government was required to allege an interstate commerce nexus in the indictment to adequately allege a violation of 18 U.S.C. § 1347, which prohibits execution of a scheme to defraud a health care benefit program. Finding that the Indictment failed to specifically allege the "affecting commerce" jurisdictional element, the Court dismissed the Indictment without prejudice. Other than the Young Moon Order, the defendants have cited no other authority to support their contention.

Based upon the clear precedent, the Court finds the defendants' constitutional challenge to the Controlled Substances Act to be without merit and recommends that his motion to dismiss for lack of allegation of a specific interstate commerce element be denied.

## II. REVERSE VERTICAL PREEMPTION

The defendants move [Doc. 67] the Court to dismiss the indictment because the drug offenses with which they are charged are matters of substantial state concern and within the state's police powers. They argue that principles of federalism inherent within the Tenth Amendment compel the federal courts to abstain from exercising jurisdiction over the charges. Specifically, the defendants argue that the conduct alleged in the Indictment all occurred in Tennessee and was investigated by officers of the Oak Ridge Police Department. Accordingly, the defendants maintain that the state is better situated to prosecute these allegations and that federal prosecution, in this instance, violates federalism and wastes federal resources. The government contends [Doc. 85] that no precedent exists for finding reverse vertical preemption, nor has it ever been the basis for the dismissal of an indictment in a criminal case.

---

[2] See Case No. 2:04-00014, [Doc. 57].

The Tenth Amendment to the United States Constitution provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people." The defendants do not allege that the federal district court lacks jurisdiction over their case, nor could they as it is well-settled that the defendants may be prosecuted and convicted under a federal statute even after they have been convicted in a state prosecution based upon the same conduct. See Abbate v. United States, 359 U.S. 187, 193-96 (1959); Bartkus v. Illinois, 359 U.S. 121, 132-33 (1959); see also Martin v. Rose, 481 F.2d 658, 660 (6th Cir. 1973) (upholding the validity of the dual sovereignty doctrine despite some limited erosion since Bartkus). Instead, the defendants' contentions turn upon the applicability of the doctrine of federal abstention to the case at hand. They assert that although the Court has jurisdiction over the defendants, it should refrain from exercising its jurisdiction because the charged drug offenses are heavily regulated by the state and fall within the state's police powers.

> "Abstention from the exercise of federal jurisdiction is the exception, not the rule[:]"
>
> "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1975) (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89 (1959)). Abstention is never appropriate simply because the case could also be brought in state court. Id. Instead, the Supreme Court has carefully restricted the abstention doctrine to certain types of situations. See Id.

The defendants rely upon the type of abstention that the Supreme Court established

in <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943).[3] In <u>Burford</u>, the Court held that federal equity courts should refrain from exercising jurisdiction in matters that were heavily regulated by state law, where state review of the issues was adequate and expeditious and where federal decisions would threaten the success of state policy on domestic matters. <u>Id.</u> at 333-34.

The defendants contend that the <u>Burford</u> abstention doctrine applies in the present case because Tennessee heavily regulates the activities alleged in the Indictment and because this conduct is a matter of substantial state concern. The Court finds that the defendants interpret <u>Burford</u> too broadly. In <u>Burford</u>, the Court noted that the Texas Railroad Commission carefully regulated the competing rights of property owners in the East Texas Oil field and balanced those interests with the state economy and a policy of oil conservation. <u>Id.</u> at 318-20. The Texas courts with jurisdiction in this area had gained "specialized knowledge" by reviewing myriad of these cases. <u>Id.</u> at 327. The Court cited examples of how federal decisions had created problems for the state's policies and regulatory efforts. <u>Id.</u> at 327-30. Thus, the Court felt the Texas courts were best suited to hear cases involving the regulation of the oil fields, noting the ultimate potential for Supreme Court review on constitutional issues. <u>Id.</u> at 333.

---

[3] The doctrine of federal abstention has evolved into four categories. <u>See</u> <u>Grode v. Mutual Fire, Marine, & Inland Ins. Co.</u>, 8 F.3d 953, 956-57 (3d Cir. 1993) (tracing the history of the federal abstention doctrine). In addition to <u>Burford</u> abstention, the other three categories are <u>Pullman</u> abstention, the abstention established in the <u>Colorado River</u> case, and <u>Younger</u> abstention. <u>Id.</u> <u>Pullman</u> abstention involves federal courts declining jurisdiction when they cannot answer a substantial federal constitutional question until difficult, unresolved questions of state law are answered. <u>Grode</u>, 8 F.3d at 956 (citing <u>Railroad Comm'r v. Pullman Co.</u>, 312 U.S. 496 (1941)). Another type of abstention permits federal courts to abstain from hearing cases involving complicated regulatory acts in which Congress has granted jurisdiction to state courts. <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 819-20 (1975). <u>Younger</u> abstention cautions federal courts not to interfere with state proceedings, particularly with a state criminal prosecution, "when the moving party has an adequate remedy under law and will not suffer irreparable injury." <u>Younger v. Harris</u>, 401 U.S. 37, 43-44 (1971).

11

Initially, the Court notes that the drug and weapon offenses which form the basis for the federal charges in the present case are regulated at both the federal and the state level. If the abstention doctrine were applied as the defendants suggest, federal prosecutions would never be appropriate for any offense that was also a state offense. In this respect, the Court has located no federal case in which a federal prosecution was dismissed pursuant to Burford abstention. Cf. United States v. Charles, 213 F.3d 10, 23 (1st Cir. 2000) (declining to dismiss federal prosecution of narcotics and firearms offenses and holding "the Burford doctrine does not apply, as there is no complex state regulatory scheme"); United States v. Lewis, 936 F. Supp. 1093, 1107 (D. R.I. 1996) (declining to dismiss indictment for violations of the Child Support Recovery Act based upon Burford abstention); United States v. Hampshire, 892 F. Supp. 1397, 1331 (D. Kan. 1995) (declining to dismiss an information for violations of the Child Support Recovery Act based upon Burford abstention).

Finally, the defendants have not shown a threat to state policy from federal prosecution. Raising the bare possibility of a threat to state policy is insufficient as "the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Colorado River, 424 U.S. at 816 (discussing why Burford abstention was not applicable in that case). If the Court were to speculate about the effect of this federal prosecution on Tennessee's policies in preventing the use of illegal controlled substances and regulating weapons, it would presume that federal prosecution of drug and weapons cases would further rather than threaten the state's policies in these areas. The Court finds the defendants' federalism arguments to be unfounded and recommends that the District Court deny the motion to dismiss the indictment on this basis.

## III. CONCLUSION

For the foregoing reasons, the Court respectfully recommends that Defendants Truss and Dillards motions to dismiss the indictment [**Docs. 62 and 67**] be **DENIED**.[4]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[4] Any objections to this Amended Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140 (1985). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).