UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 3:05-CR-146 |
| V. | ) | (PHILLIPS/SHIRLEY) |
| | ) | |
| | ) | |
| ROBERT ANTOINE TRUSS, | ) | |
| MICHAEL DEWAYNE DILLARD, and | ) | |
| JASMINE DESREKA CROWLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This matter is before the Court pursuant to Defendant Truss's Motions To Suppress [Docs. 54 and 83] and Defendant Crowley's Motion To Suppress Fruits Of Illegal Search Of Defendant's Residence [Doc. 64]. By Order [Doc. 84], the Court has permitted Defendant Truss to adopt the pleadings filed by co-defendants, including Defendant Crowley's motion to suppress [Doc. 64]. Defendant Truss has also specifically requested [Doc. 83] to adopt Defendant Crowley's suppression motion [Doc. 64] and related brief [Doc. 65].

The parties came before the Court for a suppression hearing on March 29, 2006. Assistant United States Attorney Steve Cook was present representing the government. Attorney Ursula Bailey was present representing Defendant Truss and Attorney Dennis Francis was present representing Defendant Dillard. Defendants Truss and Dillard were present as well. Additionally, Attorney Stephen Johnson was present representing Defendant Crowley, who was subpoenaed by

1

Defendant Truss to testify at this hearing. At the hearing, counsel for Defendant Dillard stated that Dillard did not have standing to pursue the above motions and, thus, did not join in, or seek to adopt, the suppression motions filed by his co-defendants. At the conclusion of the hearing the Court took the suppression motions and related filings under advisement.

## I. POSITION OF THE PARTIES

Defendant Truss moves [Docs. 54 and 83] the Court for an Order suppressing the fruits of the search of an illegal search and seizure of items from the residence property of Defendant Crowley[1]. Defendant Truss contends that, while he was not listed on the apartment lease, he has standing to contest the search because he had an expectation of privacy. Specifically, he contends that he kept clothes and other personal items at the apartment and, at the very least, was an overnight guest on several occasions. Minnesota v. Olson, 495 U.S. 91, 96-97 (1990). Additionally, Defendant Truss contends that the officers executing the search warrant failed to follow the proper procedures of "knock and announce." United States v. Pinson, 321 F.3d 558, 565 (6th Cir. 2003).

The government responds [Doc. 85], first noting that (1) Truss has the threshold burden of establishing that he had a reasonable expectation of privacy in the premises searched, and (2) he also has the burden of establishing the illegality of the entry. The government further acknowledges that once the defendant establishes a prima facie case, the burden of proof shifts to the government. United States v. Murrie, 534 F.2d 695, 697-98 (6th Cir. 1976). It contends that the instant case does not involve an unannounced entry and that the officers actions were reasonable

---

[1] The residence address for which the search warrant was issued in this case is not provided by the defendants in their respective motions. However, Count Five of the Indictment [Doc. 3] indicates that Defendant Crowley's residence was located at 274 Jefferson Avenue, Oak Ridge, Tennessee.

under the circumstances.

Finally, Defendant Truss also moves [Doc. 64] the Court for an Order suppressing the fruits of an illegal search and seizure of items from Defendant Crowley's residence property, contending that (1) the search warrant does not contain sufficient probable cause, and (2) the affidavit is a bare bones affidavit. The government did not file a written response to this motion [Doc. 64]. However, at the March 29 hearing, counsel for the government stated that it was his understanding that the sole purpose of the evidentiary hearing was to address the "knock and announce" issue. He further argued that the issue regarding the validity of the search warrant had not been properly raised before the Court, in that (1) the defendant had not provided a factual basis for his motion and (2) the defendant had not submitted an affidavit as to what facts he was alleging were improper. Arguing that the sufficiency of the search warrant is to be gauged by a "four corners review" of the warrant, the government maintained that an evidentiary hearing was improper at this time because the defendant had not made the threshold showing under Franks v. Delaware.

At the hearing, the Court advised defense counsel that, normally, with regard to challenges to the validity of a search warrant, the scope of the Court's review is limited to a four corners review of the search warrant.[2] In other words, counsel was advised that beyond the defendant's production of the search warrant and underlying affidavit, an evidentiary hearing on the validity of the search warrant was premature at this time.[3] Despite advisement, defense counsel did

---

[2] See Whiteley v. Warden, 401 U.S. 560, 565 n. 8 (1971) ( "[i]n reviewing the validity of a search warrant, a court is limited to the information and circumstances contained within the four corners of the underlying affidavit"); United States v. Smith, 783 F.2d 648, 654 (6th Cir. 1986).

[3] Under Franks v. Delaware, a defendant is entitled to an evidentiary hearing on the veracity of statements in a search warrant affidavit only if (1) there is a substantial preliminary showing that specified portions of affiant's averments are deliberately or recklessly false, and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set aside. United States v. Frazier, 423 F.3d

3

not place the search warrant and affidavit into evidence at the hearing, nor was a copy attached as an exhibit to the defendant's motion [Doc. 64].

Because the Court does not have a copy of the search warrant or affidavit at issue in this case, it is unable to conduct a "four corners review" at this time. Additionally, to the extent that the defendant argues that he may go outside the affidavit to challenge probable cause to issue a search warrant, the Court agrees. However, the defendant must <u>first</u> make a substantial showing that the affidavit contains deliberate falsehoods or reckless disregard for the truth, without which the affidavit would be an insufficient basis for the warrant. <u>See</u> <u>Franks v. Delaware</u>, 438 U.S. 154 (1978); <u>United States v. Jenkins</u>, 728 F.2d 396, 397 (6th Cir. 1984). Defendant Truss made no such showing.

Moreover, Defendant Truss has not produced a copy of the affidavit, nor has he provided any type of factual basis for contesting the validity of the affidavit. Under <u>Franks</u>, the Court is to presume the validity of the affidavit in support of the search warrant. <u>Franks</u>, 438 U.S. at 171. Thus, the burden is on the defendant to show such falsehoods in the affidavit. The defendant has not met this burden. In fact, the defendant's motion [Doc. 64], without more, is nothing more than conclusory allegations and unsupported speculation. Accordingly, the Court recommends that the District Court deny the defendant's motion to suppress [Doc. 64] on this basis.

The remaining evidentiary motions [Docs. 54 and 83], relating to the alleged violation of the "knock and announce" rule prior to entry into Defendant Crowley's residence, are the subject matter of the testimony below.

---

526, 538 (6th Cir. 2005) (citing <u>Franks</u>, 438 U.S. 154 (1978)).

## II.  SUMMARY OF TESTIMONY

At the evidentiary hearing, Defendant Truss called Investigator Brian Yook ("Yook") as his first witness.  Yook testified that he had been employed with the Oak Ridge Police Department ("ORPD") for just over seven (7) years and that he had worked as a narcotics agent with the ORPD for approximately three (3) years.  He stated that he had participated in approximately ten (10) to fifteen (15) search warrants and secured approximately six (6) to eight (8) search warrants during his three years as a narcotics agent.  Yook testified that some time prior to December 2, 2005, he began investigating a residence at 274 Jefferson Avenue that belonged to Jasmine Crowley and Robert Truss.

Yook testified that he secured a search warrant from Judge Donald Layton.  He stated that he then notified his supervisor and the SWAT team commander that the search warrant was signed and that he wanted to attempt to serve the warrant on that same date.  Yook testified that he received the signed search warrant at approximately 5:15 p.m. or 5:30 p.m. and that he arrived at the residence [at 274 Jefferson Avenue] at approximately 7:30 p.m. to serve the warrant.  He stated that approximately eleven (11) or twelve (12) officers were with him when he arrived at the residence.  Yook testified that he and the SWAT team approached the front door.  He stated that he knocked "very loudly" on the door and yelled "POLICE. SEARCH WARRANT."  He testified that no one came to the door and that he waited approximately "five to eight second" before he broke the door down.  When asked whether he knocked down Defendant Crowley when he broke the door down, Yook stated "not that I'm aware of, no."  He further indicated that he did not see Defendant Crowley when he entered the house.

On cross-examination, Yook testified that prior to serving the warrant he met with the officers who assisted him in serving the warrant. He stated that during this meeting he informed the officers that his investigation had revealed that Defendant Truss commonly kept firearms either on his person or close to him while he was dealing drugs. He testified that he had received this information from an informant who had previously provided reliable information on several occasions and that the informant had never been incorrect. He stated that "firearms…go hand-in-hand with this type of stuff" and that a lot of times drug dealers get robbed and therefore have weapons to protect themselves.

Yook testified that he had identified the defendant as a mid-level crack cocaine dealer and that he believed there would be crack cocaine inside the residence. He testified that the quantity of drugs that he expected to find at the residence would be easy to dispose of. Yook explained, based on his training and experience in executing search warrants at drug houses, that it was common for drug dealers to attempt to dump their crack cocaine in the toilet and flush it.

Yook further testified that he had information that Defendant Truss had been arrested for aggravated assault relating to an incident that occurred on December 1, 2004, involving a drug-related turf war between local gangs. Specifically, Yook testified that he knew the defendant had been identified by one of the victims as a shooter in that incident. He stated that he also knew that Defendant Truss had been arrested for aggravated assault in Anderson County Court and that on June 15, 2005, Defendant Truss reported that he had been shot in the leg during an attempted robbery that occurred while he was sitting in his car. Yook maintained that he possessed all of this information at the time he was preparing to execute the warrant at 274 Jefferson Avenue, in Oak Ridge.

Yook stated that the majority of the SWAT officers who assisted him in executing the warrant wore a "BDU-style" military uniform with a t-shirt that said "SWAT." He stated that he and the SWAT officers were wearing raid vests that were clearly marked in large, bright-colored letters on the front and back that said either "POLICE" or "SWAT." Yook testified that it had just turned dark when they approached the front door of the residence. He described the residence as being a small, one-bedroom duplex that was approximately 600 square-feet in size. Yook testified that approximately seven (7) officers were positioned at the front door with him and that the rest of the SWAT team members were positioned around the residence and at the back door. Yook stated that he was the point person at the front door of the residence and that the officer behind him had a ram in case they needed to force entry into the residence.

Yook testified that "almost immediately" after he knocked and announced, he heard footsteps running away from him towards the back of the house. He stated that he was also notified by another officer that someone within the residence had looked out at them from a window which was located right next to the front door. Yook testified that based on all of the circumstances, including (1) the involvement of weapons, (2) knowing that the quantity of drugs the defendants had could easily be disposed of, (3) hearing the footsteps running away from them, and (4) the fact that someone had looked out the window, knew they were there, and still did not open the door, he made the decision to force the door open. Yook stated that immediately after they forced open the door, he saw a female running into the bathroom in the residence. He stated that the hallway that leads to the bathroom is almost directly in front of the front door [Gov. Ex. 2]. Yook testified that he gave chase, the whole time yelling, "POLICE. GET ON THE GROUND."

On redirect examination, Yook testified that he had received information from his informant that Defendant Truss was at the residence on December 2, 2005 and that Yook, in fact, believed Defendant Truss was at the residence. He stated that during the course of his investigation, Defendant Truss had been seen at the residence, that Defendant Truss sold drugs from the residence, and that a police officer had observed him entering the residence approximately fifteen to twenty minutes before they arrived at the residence to execute the warrant.

The defense next called Jasmine Crowley, who, after stating her name for the record, invoked her Fifth Amendment privilege, upon advice of counsel, in response to the question regarding her place of residence on December 2, 2005.[4] When asked whether Defendant Crowley intended to invoke her Fifth Amendment privilege in response to every question asked, Crowley stated, "yes." The defense did not ask Crowley any further questions, nor did the defense call any other witnesses to testify at the hearing.

## II. FINDINGS OF FACT

The Court finds that at approximately 5:15 p.m. on December 2, 2005, Investigator Yook secured a signed search warrant for the residence at 274 Jefferson Avenue in Oak Ridge, Tennessee. During the course of investigating the residence, Defendant Truss was observed at the residence and Yook knew that Defendant Truss sold drugs from the residence. He also knew that

---

[4] Upon the defense calling Defendant Crowley to testify at this hearing, counsel for Defendant Crowley objected and stated that Crowley, acting through her counsel, asserted her Fifth Amendment privilege not to testify. As a basis for counsel's objection to Crowley's testimony at the hearing, counsel argued that while Crowley had entered a plea of guilty, it was still a conditional plea because she had not yet been sentenced, and, thus, she had not formally waived any right to assert a Fifth Amendment privilege. Additionally, counsel argued that Crowley had pending criminal charges in Anderson County stemming from the exact same facts and issues and that she had a Fifth Amendment privilege with regard to those charges as well.

8

Defendant Truss had been observed entering the residence approximately fifteen to twenty minutes before the officers arrived at the residence on December 2, 2005 to execute the search warrant.

Prior to executing the warrant, Yook met with the SWAT officers who were assisting him in serving the warrant and informed them that, based on information received from a reliable informant, Defendant Truss commonly kept firearms either on his person or close to him while he was dealing drugs. Yook identified Defendant Truss as a mid-level crack cocaine dealer and expected to find quantities of crack cocaine at the residence that could easily be disposed of by dumping the drugs in the toilet and flushing them. Yook knew that drug dealers commonly disposed of small quantities of drugs in this manner. Yook also knew that Truss (1) was arrested in December, 2004 related to a drug turf war between local gangs and that Truss had been identified by a victim as a shooter, (2) was arrested in June, 2005 for aggravated assault, and (3) had reported an attempted robbery that occurred while he was sitting in his car and that Truss had been shot in the leg during this incident.

At approximately 7:30 p.m., it had just turned dark when Yook and eleven (11) or twelve (12) SWAT officers arrived at the Jefferson Avenue residence to execute the warrant. All officers were wearing raid vests that were clearly marked in large, bright colored letters on the front and back that said either "POLICE" or "SWAT." The residence at issue is a small, one-bedroom duplex that is approximately 600 square-feet in size. Yook and seven (7) other officers were positioned at the front door and the rest of the SWAT team members were positioned around the residence and at the back door. Yook knocked very loudly on the door and yelled, "POLICE. SEARCH WARRANT."

Almost immediately after Yook knocked and announced, he heard footsteps running away from him towards the back of the house. Additionally, someone from within the residence looked out the window located next to the front door and saw the officers, but no one opened the door. Yook waited approximately five (5) to eight (8) seconds, after knocking and announcing, before he forced entry into the residence. Once the door was forced open, he immediately saw a female running down the hall toward the bathroom. He gave chase, the whole time yelling, "POLICE. GET ON THE GROUND."

## III. ANALYSIS

Defendant Truss contends that evidence seized from Defendant Crowley's residence at 274 Jefferson Avenue in Oak Ridge, Tennessee, pursuant to a state search warrant[5] executed on December 2, 2005, should be suppressed because the officers executing the search warrant failed to follow the proper procedures of "knock and announce" in violation of the Fourth Amendment. The government contends, to the contrary, that this case does not involve an unannounced entry because the officers did, in fact, follow the proper procedures of "knock and announce." It furthermore argues that, under the circumstances, the officers waited a reasonable period of time before forcibly entering the residence and, thus, their actions were reasonable under the Fourth Amendment.

The Court notes that before it may address the knock and announce issue, it must first determine whether Defendant Truss has standing to challenge the search of Defendant Crowley's

---

[5] Defendant Crowley's motion [Doc. 64] indicates that a state magistrate judge issued the search warrant. Investigator Yook testified that he secured a signed search warrant from Judge Donald Layton.

10

residence. If Defendant Truss does have standing to challenge the search, the Court will then proceed to determine whether the officers complied with the knock and announce rule when executing the search warrant.

### 1. Standing to Challenge the Search

Initially, the Court notes that with regard to the issue of Defendant Truss's standing to challenge the search of the residence at 274 Jefferson Avenue, the Court has been provided, aside from Defendant Truss's brief [Docs. 54 and 83], with very limited evidence to consider. The Court finds it significant, however, that the government has not disputed Defendant Truss's contention that he had a legitimate expectation of privacy in Defendant Crowley's residence on December 2, 2005.

Generally, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." United States v. Heath, 259 F.3d 522, 532 (6th Cir. 2001) (citing Rakas v. Illinois, 439 U.S. 128, 134 (1978)). However, "a person can have a legally sufficient interest in a place other than his own home so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place." Id. In other words, "'the Fourth Amendment protects people, not places,' and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." United States v. Hunyady, 409 F.3d 297, 300 (6th Cir. 2005) (citing Minnesota v. Olson, 495 U.S. 91, 97 (1990)).

In order to avail himself of the protection offered by the Fourth Amendment, Defendant Truss must demonstrate that he had a legitimate expectation of privacy at the 247 Jefferson Avenue property. Hunyady, 409 F.3d at 300; see also Rakas, 439 U.S. at 143 ("[The]

11

capacity to claim the protection of the Fourth Amendment depends...upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.").  In the present case, Defendant Truss does not claim that he was listed on the lease of the apartment at 274 Jefferson Avenue.  Instead, he claims that he was, at the very least, an overnight guest in that (1) he kept clothes and other personal items at the residence, and (2) he stayed at the apartment overnight whenever he traveled to Oak Ridge.

The Supreme Court has held "that overnight guests claim a legitimate expectation of privacy in a host's home" that is not diminished because he does not have "complete dominion and control over the apartment." Olson, 495 U.S. at 98-99.  Nonetheless, casual visitors or guests on a third party's premises for a commercial purpose do not have a legitimate expectation of privacy in a third party's home. Minnesota v. Carter, 525 U.S. 83, 91 (1998); see also United States v. Love, 70 F.3d 116, 1995 WL 675562, *4 (6th Cir. Nov. 13, 1995).  To determine whether a defendant is entitled to the protections afforded by Olson, the Supreme Court clarified in Carter that courts should consider whether there was a "previous relationship" with the apartment lessee or if there is any indicia "of acceptance into the household." Minnesota v. Carter, 525 U.S. 83, 91 (1998); see also United States v. Heath, 259 F.3d 522, 532 (6th Cir. 2001) (citing Sangineto-Miranda, 859 F.2d 1501, 1510 (6th Cir. 1988)) (finding that defendant, who had "unrestricted access[,]...[was] allowed to stay overnight 'as often as he felt'" and a key, established a legitimate expectation of privacy in the apartment).

While the evidence does not clearly establish how often Defendant Truss stayed at Defendant Crowley's residence, or what type of "previous relationship" they had,  the Court notes that Investigator Yook testified that the residence "belonged to Jasmine Crowley and Robert Truss."

Yook also stated that during the course of his investigation, Defendant Truss was seen entering the residence and that he sold drugs from the residence. Taking the testimony of Investigator Yook into account, which the Court finds to be credible and unimpeached, along with Defendant Crowley's contention that he was, "at the very least," an overnight guest and kept clothes and personal items at the residence, the Court finds that there is some indicia, albeit minimal, that Defendant Truss was "accepted into the household." Moreover, whatever relationship Defendant Truss may have shared with Crowley, the Court finds that the relationship appears to have pre-dated the three-day time period charged in the Indictment [Doc. 3], during which time the apartment was allegedly used for illegal conduct. See Heath, 259 F.3d at 533 (holding, *inter alia*, that defendant's familial tie to host was clearly a "relationship" which pre-dated the apartment's use for illegal conduct as contemplated by Carter, 525 U.S. at 90).

Based on the above facts, the Court finds that Defendant Truss maintained a legitimate expectation of privacy at the 274 Jefferson Avenue residence. Accordingly, the Court finds that the search of Defendant Crowley's residence implicated Defendant Truss's Fourth Amendment rights. Thus, the Court must next determine whether the officers complied with the knock and announce rule when executing the search warrant at 274 Jefferson Avenue.


*2. Knock And Announce*

The knock and announce rule requires that before police execute a search warrant, they must identify themselves, indicate that they are present for the purpose of executing a search

warrant, and wait a reasonable period of time before forcibly entering a premises.[6] <u>United States v. Martin</u>, 112 Fed.Appx. 456, 459 (6th Cir. 2004); <u>see</u> <u>also</u> <u>United States v. Pinson</u>, 321 F.3d 558, 565 (6th Cir. 2003). The knock and announce rule serves several purposes: (1) it reduces the potential for violence to both the police officers and the occupants of the house into which entry is sought; (2) it curbs the needless destruction of private property; and (3) it protects the individual's right to privacy in his or her own house. <u>Id.</u> (citing <u>United States v. Bates</u>, 84 F.3d 790, 794 (6th Cir. 1996)).

        The knock and announce rule "forms a part of the reasonableness inquiry under the Fourth Amendment." <u>Pinson</u>, 321 F.3d at 566 (citing <u>Wilson v. Arkansas</u>, 514 U.S. 927, 929 (1995)). Failure to knock and announce prior to forcibly entering a location to execute a search warrant, absent exigent circumstances, is unreasonable under the Fourth Amendment. <u>Id.</u> (citing <u>United States v. Dice</u>, 200 F.3d 978, 983 (6th Cir. 2000)). Nonetheless, the Supreme Court has stated that the reasonableness inquiry is not dictated by bright-line rules but is fact-specific, to be determined on a case-by-case basis. <u>Id.</u> (citing <u>Ohio v. Robinette</u>, 519 U.S. 33, 39 (1996)). Therefore, the Court must look to the totality of the circumstances when determining whether the officers entry into the residence at 274 Jefferson Avenue was reasonable. <u>Id.</u> (citing <u>United States v. Banks</u>, 540 U.S. 31 (2003)). The Court notes, however, that the requirement of reasonableness does not forego consideration of law enforcement interests. <u>Id.</u> (citing <u>Wilson</u>, 514 U.S. at 934).

---

[6] Because this case involves a state warrant executed by state law enforcement, the Court need not consider the codification of the knock and announce rule in 18 U.S.C. § 3109. <u>United States v. Gatewood</u>, 60F.3d 248, 249 (6th Cir. 1995).

In the present case, to the extent that Defendant Truss contends that the officers entry into the residence was unannounced, the Court finds that he has provided absolutely no factual basis or evidence to support this argument. On the other hand, Investigator Yook testified that he knocked "very loudly" on the door of the residence and yelled, "POLICE. SEARCH WARRANT." The Court finds that Yook's testimony is credible and unimpeached and that he did, in fact, announce the presence and authority of the officers before forcing entry into the residence.

Next, to the extent Defendant Truss argues that the officers failed to comply with the "knock and announce" rule by not waiting long enough after knocking and announcing their presence before entering the residence, the Court disagrees. Investigator Yook testified that he and the officers assisting him waited approximately five (5) to eight (8) seconds after announcing their presence and authority before forcibly entering the residence. Yook further testified that there were several factors that contributed to his decision to enter the residence at this time, including: (1) knowledge that Truss was inside the residence, (2) knowledge that Truss commonly kept firearms either on his person or close to him while he was dealing drugs, (3) knowledge that Truss had a history for violence, (4) knowledge that Truss was a mid-level crack cocaine dealer, who sold drugs out of the residence at issue, (5) knowledge that the quantity of drugs which they expected to find inside the residence could easily be disposed of by dumping the drugs in the toilet and flushing them, (6) knowledge that the residence was a small, one-bedroom residence that was approximately 600 square feet in size, (7) he heard footsteps running away from the door when he knocked and announced, and (8) knowledge that someone from within the residence had looked out a window, knew the officers were there, and still did not open the door.

Initially, the Court notes that it need not decide whether a wait of five to eight seconds, standing alone, is adequate under the knock and announce rule, because the Fourth Amendment dictates only that the officers' overall actions be reasonable, not that they wait a prescribed length of time before forcible entry. Pinson, 321 F.3d at 566 (citing United States v. Spikes, 158 F.3d 913, 925-26 (6th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999)). Moreover, the Sixth Circuit has declined to adopt a bright-line rule for the amount of time that officers must wait before entry. United States v. Hardin, 106 Fed.Appx. 442, 444 (6th Cir. 2004). Instead, "[w]hether police officers paused long enough before admitting themselves into a home thus entails a highly contextual analysis, requiring examination of all the circumstances of the case." Id. (citing Spikes, 158 F.3d at 926). More specifically, to determine the reasonableness of the interim between announcement and entry, the Court must consider a number of factors, including the object of the search, possible defensive measures taken by residents of the dwelling to be searched, time of day, and method of announcement. Pinson, 321 F.3d at 566 (citing Spikes, 158 F.3d at 926-27).

### a. The Object of the Search

Generally, the presence of drugs lessens the time officers must wait before entering a residence after announcing their presence. Pinson, 321 F.3d at 567 (citing Spikes, 158 F.3d at 926). In United States v. Johnson, the Sixth Circuit held that a search was valid even though there was only a five-second wait between knocking and entering when the officer knew that drugs were present as the result of a controlled delivery. 215 F.3d 1328, 2000 WL 712385 (6th Cir. 2000) (unpublished opinion). Because the drugs were prepackaged in small quantities, the Court reasoned that the officers could "reasonably assume persons with access to working plumbing facilities [would] try to destroy this evidence." Id. at *5 (citing Spikes, 158 F.3d at 926).

16

In the present case, the officers were executing a residential search warrant for drugs (specifically, crack cocaine). Prior to executing the warrant, Investigator Yook (1) knew that Defendant Truss was a mid-level crack cocaine dealer, (2) knew that Truss sold drugs from the residence at 274 Jefferson Avenue, (3) knew that Truss was inside the residence at the time they executed the warrant, and (4) expected to find quantities of crack cocaine at the residence that could easily be disposed of by dumping the drugs in the toilet and flushing them.

In <u>Banks</u>, the Supreme Court ruled that "if circumstances support a reasonable suspicion of exigency when the officers arrive at the door, they may go straight in." 540 U.S. at 525. Here, as in <u>Banks</u>, Investigator Yook's "knock and announce" arguably started the clock running toward the moment of apprehension that Defendant Truss, or someone inside the residence, would flush away the easily disposable crack cocaine, prompted by knowing that the officers would soon be coming in. This danger of disposal, however, fully ripened when, after Yook knocked and announced, he heard footsteps running away from the front door. At this point, the Court finds that the officers could fairly suspect that the drugs would be gone if they were reticent any longer. Thus, once the exigency matured, as it did in this case, the officers were not bound to learn anything more or wait any longer before going in. <u>Id.</u> at 527.

Finally, the Court notes that the Sixth Circuit has held similar wait times to be reasonable in drug cases with similar facts including easily disposable evidence. <u>Pennington</u>, 328 F.3d at 221 (8-10 seconds); <u>Pinson</u>, 321 F.3d at 568 (5-10 seconds); <u>Johnson</u>, 2000 WL 712385, *4 (5 seconds).

### b. *Possible Defensive Measures*

Knowledge by law enforcement officers that the occupants of the premises are armed and dangerous can be an important factor. Pinson, 321 F.3d at 567. "The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent...[e]vidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant." Id. (citing Bates, 84 F.3d at 795).

Immediately prior to executing the warrant in this case, Yook met with the officers that were assisting him in executing the warrant and warned them that (1) Truss was inside the residence at 274 Jefferson Avenue, (2) Truss sold drugs from the residence, (3) Truss commonly kept firearms either on his person or close to him while he was dealing drugs, and (4) Truss had a history for violence.

The Court finds that given the officers knowledge of the above facts, the officers did not need to wait long enough for a barrage of bullets from within before concluding that they had given the occupants enough time to respond to their request for entry. See Spikes, 158 F.3d at 926 (citing United States v. Bonner, 874 F.2d 822, 824 (D.C. Cir. 1989)). Once police officers seeking to enter a drug trafficker's enclave have announced their identity and authority, they stand before the door blind and vulnerable. Id. In such a danger-fraught situation, the officers may quite reasonably infer refusal more readily than under other circumstances. Id. at 927.

### c. *Time of Day*

The amount of time officers need to wait before entering a home necessarily depends on how much time it would take for a person in the house to open the door. Pinson, 321 F.3d at 567.

18

When the police execute a warrant in the dead of night or have some other reason to believe that a prompt response from the homeowner would be unlikely, the length of time the officers should wait increases. Id. (citing Griffin v. United States, 618 A.2d 114, 121 (D.C.App. 1992)). Correspondingly, when officers execute a warrant in the middle of the day or have requested admittance from the occupant face-to-face, the length of time the officers must tarry outside diminishes. Id. (citing United States v. Kemp, 12 F.3d 1140 (D.C. Cir. 1994)).

In the present case, when officers executed the warrant at 7:30 p.m., it was reasonable to assume that someone would have been awake and responsive because (1) an officer observed Defendant Truss enter the residence approximately fifteen to twenty minutes before the warrant was executed, (2) almost immediately after Investigator Yook "knocked and announced," he heard footsteps running away from him towards the back of the house, (3) an officer observed someone from within the residence look out a window located next to the front door and see the officers, but that person did not open the door, and (4) immediately upon forcing open the front door, Yook saw a female running down the hall (away from the front door) towards the bathroom.

The Court finds that the above facts, especially the fact that Investigator Yook heard the sound of footsteps running away from the front door, would indicate to a reasonable police officer that not only was someone awake and responsive, but also that the request for entry was being effectively denied, that the person inside the home was taking some type of evasive action, including the possible destruction of contraband, and that the person inside the home was aware that police were seeking entry to his home. See United States v. Pennington, 328 F.3d 215, 221 (6th Cir. 2003).

### d.  Method Used to Alert Those Inside the Residence

In the present case, approximately seven officers, wearing clearly marked raid vests, approached the front door of the residence and then Investigator Yook knocked "very loudly" on the door and yelled, "POLICE.  SEARCH WARRANT."   The officers waited approximately five to eight seconds, during which time an occupant looked out the window of the residence and then footsteps were heard running away from the door towards the back of the house, before they used a battering ram to force open the front door of the residence.

The Court finds that Investigator Yook did, in fact, knock and announce their presence and authority before entering the residence.  The Court also finds that the residence was a small, one-bedroom apartment, through which sound would travel easily.  See Banks, 124 U.S. at 524.  Furthermore, the Court finds that the method used by the officers was obviously sufficient enough to alert occupants to police presence and purpose, especially given the fact that someone looked out the window of the residence, saw the officers, and then started running away from the front door.

Under the analysis in Spikes and Pinson, and given the testimony of Invetigator Yook, the Court finds that the time (five to eight seconds) which elapsed between the announcement and entry was sufficient under the circumstances to satisfy the reasonableness requirement of the Fourth Amendment.  This conclusion is bolstered by the fact that, unlike the circumstances in Spikes and Pinson, Investigator Yook heard a person running away from the door after he knocked and announced the presence of the police.  Furthermore, the Sixth Circuit has found similar periods of time sufficient to justify forcible entry into the residence.  Pennington, 328 F.3d at 221 (8-10 seconds); Pinson, 321 F.3d at 568 (5-10 seconds); Johnson, 2000 WL 712385, *4 (5 seconds).

20

Accordingly, the Court finds that there is no basis to suppress evidence on the basis that the "knock and announce" rule was violated and, thus, recommends that the District Court deny Defendant Truss's suppression motions.

## IV.  CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendants Truss's suppression motions [**Docs. 54, 64 and 83**] be **DENIED**.[7]

Respectfully submitted,

   s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[7]Any objections to this Amended Report and Recommendation must be served and filed with the clerk of the court within ten (10) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b), Fed. R. Civ. P.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  Thomas v. Arn, 474 U.S. 140 (1985).  The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).